[L. A. No. 4490. Department Two.—December 13, 1918.]

E. MAY LUTZ, Appellant, v. MERCHANTS NATIONAL BANK OF SAN DIEGO (a Corporation), Defendant; C. W. McKEE, Intervening Plaintiff and Respondent.

APPEAL — INSUFFICIENCY OF EVIDENCE TO SUPPORT FINDINGS — NONAPPEARANCE OF RESPONDENT—PRESUMPTION—INAPPLICABILITY OF RULE UNDER ALTERNATIVE METHOD.—The rule that where the appellant claims a reversal upon the ground of the insufficiency of the evidence to support the findings the court will, in the absence of an appearance on behalf of respondent, assume, without looking into the record, that the point is well taken, is inapplicable under the

alternative method of appeal, since under such method no specification on the ground of insufficiency of the evidence to support the findings is required, it being the duty of the parties to print in their briefs, or in a supplement appended thereto, such portions of the record as they desire to call to the attention of the court.

ID.—REVERSIBLE ERROR—BURDEN OF PROOF.—It is incumbent upon the appellant to print in his brief such portions of the record as he deems essential to a correct understanding and determination of the appeal, and while in the absence of any brief on the part of the respondent the appeal may be determined upon those portions of the record printed in appellant's brief, it is incumbent upon the appellant thereby to show that error resulting in a miscarriage of justice has occurred in order to entitle him to a reversal, even in the absence of any brief or appearance on behalf of respondent.

CLAIM AND DELIVERY—RECOVERY OF POSSESSION OF STOCK—INTERVENTION—ORDER OF PROOF.—In an action in claim and delivery to recover of a bank the possession of certificates of stock, wherein the bank defaulted, and a third party intervened claiming that the stock belonged to him and was held by the bank in escrow, the stock having been sold by him for cash and notes, and the plaintiff in answer to the complaint in intervention claimed that the stock had been placed with her as security to protect her upon a written guaranty, and that the intervener had obtained possession of the stock from her by an agreement that he would return the same after voting it at an election, and that the promise was fraudulently made without any intention of fulfillment, the court did not err in placing the burden of proof upon plaintiff as between her and the intervener.

ID.—DISPOSAL OF NOTES BY INTERVENER—EVIDENCE.—In such action, where it was found that plaintiff had no interest in the stock, that it was not deposited with her as security, and that it was the property of the intervener, there was no prejudicial error in refusing to allow evidence that the intervener had disposed of the purchase price notes.

ID.—BRINGING IN OF CORPORATION AND OWNERS OF NOTES—ABSENCE OF ERROR.—In such action, it was not error for the court to fail to bring in on its own motion the corporation and the owners and holders of the notes sold and transferred by the intervener.

APPEAL—FINDINGS—EVIDENCE.—Where there is any substantial evidence to sustain the findings, the decision of the trial court must control, regardless of the views of the appellate court concerning the preponderance of the evidence.

APPEAL from a judgment of the Superior Court of San Diego County. C. N. Andrews, Judge. Affirmed.

The facts are stated in the opinion of the court.

A. C. Mouser, J. De La Motte, and Andrews & Wright, for Appellant.

E. E. Kirk, for Respondent.

WILBUR, J.—On this appeal from the judgment against the plaintiff and in favor of the intervener, no brief is filed and no oral argument made on behalf of the intervener. The appellant moved for a judgment upon the ground that no brief had been filed, which motion was denied. The case was regularly set for hearing in this court. No appearance was made on behalf of the intervener. The matter is now submitted for decision upon the brief of the appellant and the typewritten transcript, prepared under section 953a of the Code of Civil Procedure. Appellant seeks a reversal upon the merits, without an examination of the record, upon the authority of *Richter* v. *Fresno Canal Co.,* 101 Cal. 582, [36 Pac. 96], and subsequent cases following the rule therein announced; *Davis* v. *Hart,* 103 Cal. 530, [37 Pac. 486]; *Kelly* v. *Bradbury,* 104 Cal. 237, [37 Pac. 872]; *Bullock* v. *Bullock,* 29 Cal. App. 463, [155 Pac. 1009]. These cases hold that where the appellant claims a reversal upon the ground of the insufficiency of the evidence to support the findings, the court will, in the absence of an appearance on behalf of respondent, "assume, without looking into the record, that the point raised by the appellant that the evidence is insufficient to justify the findings attacked is well taken." There are several reasons why this rule does not apply. Under the alternative method of appeal no "specification on the ground of insufficiency of the evidence to support" the findings is required. Under this system of appeal it is the duty of the parties to "print in their briefs, or in a supplement appended thereto, such portions of the record as they desire to call to the attention of the court." (Code Civ. Proc., sec. 953c.) Since the decisions in the above-cited cases the constitution has been amended, to provide that "no judgment shall be set aside, or new trial granted, in any case, on the ground . . . of the improper admission or rejection of evidence, or for any error as to any matter of pleading, or for any error as to any matter of procedure, unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a

miscarriage of justice." [Const., art. VI, sec. 4½.] It is incumbent, therefore, upon the appellant to print in his brief such portions of the record as he deems essential to a correct understanding and determination of the appeal, and while in the absence of any brief on the part of the respondent the appeal may be determined upon those portions of the record printed in appellant's brief, it is incumbent upon the appellant thereby to show that error resulting in a miscarriage of justice has occurred in order to entitle him to a reversal, even in the absence of any brief or appearance on behalf of the respondent. The typewritten transcript in the case contains over 640 pages, containing about one hundred and sixty thousand words. The quotations from the record contained in appellant's brief contain between five and six thousand words, or about one-thirtieth of the volume of the typewritten transcript. Appellant, under the head of "Statement of Facts," has summarized the facts as claimed by her, and has, under the head of "Statement of the Case," incorporated other statements of fact. Neither the pleadings, findings, nor judgment are printed in the brief. The action is one of claim and delivery to recover from the defendant, Merchants National Bank, possession of two certificates of stock, one for five hundred shares in the Palomas Land & Development Company, and the other for 350 shares in the Palomas Valley Canal Company. The bank defaulted and C. W. McKee intervened, claiming that the stock in question belonged to him and was held by the bank in escrow, the stock having been sold by McKee for fifty thousand dollars, ten thousand dollars having been paid. The plaintiff, in answer to the complaint in intervention, claims that the stock had been placed with her as security to protect her upon a written guaranty for the payment of ten thousand dollars, and that respondent had obtained possession of the stock from her by an agreement that he would return the same after voting it at an election, and that said promise was fraudulently made without any intention of fulfillment. It is apparent from the brief of appellant and a cursory examination of the transcript that the transaction involved in this case was a part of a series of transactions by which the stock of the two corporations above mentioned, hereinafter called the old companies, were to be conveyed to the Palomas Land Company, a newly organized company, hereafter referred to as the new company.

The foregoing statement sufficiently discloses the involved character of the litigation. A reversal of the judgment is sought upon the following points:

"First. The court erred in placing the burden of proof upon the plaintiff, E. May Lutz, in this case, as between her and the intervening plaintiff McKee.

"Second. The court erred in sustaining the objection of the intervening plaintiff to the offer of the plaintiff, E. May Lutz, to show that the eight notes given by Carson and Crane for forty thousand dollars had been sold and disposed of by McKee, and that he was not the owner and holder of said notes, and had no further interest therein.

"Third. The court erred in not ordering the Palomas Land Company and the owners and holders of the notes sold and transferred by McKee, to be impleaded and brought into court.

"Fourth. That the great preponderance of the evidence was against the findings of fact and conclusions of law of the court.

"Fifth. That the conclusions of law are not justified by the findings of fact."

With reference to the first point, it is sufficient to say that nowhere in the appellant's brief is there any portion of the record which shows that the burden of proof was placed upon the plaintiff. If we assume that the court required the appellant to first offer her evidence, there could have been no prejudicial error in the mere order of proof. The case was tried without a jury, and we have no means of ascertaining from the record what view the court took with reference to the burden of proof.

As to the second point, there is nothing in the record which discloses that this ruling was prejudicial. The court found that the plaintiff had no interest in the stock; that it was not deposited with her as security, and that it was the property of the intervener. Assuming these findings to be supported by the evidence, there could be no error in the refusal to allow evidence that the intervener had disposed of these purchase price notes.

With reference to the third point, there is no showing in the brief that at any time the court was asked to bring in any of these parties, or that the matter was submitted to the court in any manner for determination. The question of the

ownership of the stock and the right to its possession was litigated between the appellant and intervener. It would no doubt have been proper to have had the Palomas Land Company made a party and to have had the holders of the notes referred to made parties, for the reason that in the organization of the new company and the contracts in relation thereto it was provided that the stock in the old companies was to be transferred to the new company in exchange for one hundred and thirty-six thousand shares of stock in that company. It is claimed that these shares of stock in the new company were actually issued and placed in the possession of the plaintiff as security for the ten thousand dollars above mentioned. One of the questions involved in the case was, therefore, whether or not the actual ownership of the shares of stock in the old company was thereby vested in the new company. We cannot say, however, that it was error for the trial court to fail to bring in these parties on its own motion.

As to the fourth claim, that the great preponderance of the evidence was against the finding of fact and conclusion of law of the court, it is sufficient to say that if there was any substantial evidence to sustain the findings of the court, that decision must control in this court, whatever our view may be concerning the preponderance of the evidence.

As to the fifth point, it may be said that neither the conclusions of law nor the findings of fact are set out in the appellant's brief. Plaintiff sets out in her brief the testimony of a number of witnesses which it is claimed justified the trial court in finding that the stock in both the old and new companies was deposited with her as security for the obligation of ten thousand dollars, which she guaranteed and afterward paid on behalf of the new company. But appellant does not claim that this is all the evidence. After stating the evidence favorable to her position, it is said: "There was no contradiction of the same save by McKee himself, but his own testimony, his letters, and telegrams, all point to the conclusion that McKee gave the stock to appellant for the purpose of inducing her to put up the ten thousand dollars for the company, as collateral security and to make her absolutely secure after she had refused all the other offers." It appears by the transcript that the intervener flatly denied that the stock was placed in the hands of the plaintiff as security. He was asked the following question and gave the following answer:

"Q. Did you not say to Mrs. Lutz that you would also at that time place in her hands as security to her for this obligation which she was to assume your certificates of stock in the old companies and that she could hold it as security or a pledge amounting to that, for the payment of any obligation that you would incur?     A. Absolutely no."

It is apparent, then, that appellant's contention is, as she states it, that the preponderance of the evidence, although contradicted, was in her favor. This is not a ground for reversal. Appellant also claims that two of the findings are sufficient to entitle her to recover in the action. One is to the effect that the stock in the old companies was placed by respondent with her on an agreement that he would transfer said stock for one hundred and thirty-six thousand shares of stock in the new company, the transfer to be made when the new company had completed the payment of an option to purchase the other two-thirds interest in the old companies, and on the further agreement that respondent would give E. May Lutz a proxy to vote said stock, and the other finding that the possession of the stock had been fraudulently obtained from appellant by respondent; that is to say, upon the agreement to return the same, without any intention so to do. To an understanding of these findings it should be stated that the stock in controversy here represented a one-third interest in the old companies, and that the one hundred and thirty-six thousand shares of stock in the new company, to be issued in exchange therefor, represented a one-third of the stock of the new company; that the other two-thirds of the stock of the old companies were not owned by the respondent, but that the new company held an option originally given to respondent and transferred by him to the company to purchase the other two-thirds of the stock of the old companies for fifty thousand dollars. The record printed in appellant's brief does not make it manifest that these findings required a different judgment. There may have been other facts shown in the evidence by the respondent which would make the judgment in favor of respondent a correct one. We are bound to assume, in the absence of satisfactory showing to the contrary, that the judgment of the trial court was correct. Nor does the securing of possession of the certificates of stock by the promise to return the same without the intention so to do justify a reversal of the case, for if, as found by the court,

the stock was actually owned by McKee, he was entitled to possession thereof. In that event, the fact that he secured the same by subterfuge would not entitle the plaintiff to the recovery thereof. The fact that appellant in her concluding argument contends that she was entitled to the possession of the stock in one or the other of three different capacities shows the difficulty of correctly understanding the case on the meager portion of the record set out in appellant's brief. The appellant contends that "the judgment of the court, as it now stands, results in this: McKee has sold to the Palomas Land Company the option agreement for the two-thirds interest of Turner and O'Neill for fifty-five thousand dollars, upon which thirty thousand dollars has been paid; he has had issued to him one hundred and thirty-six thousand shares of stock of the Palomas Land Company for which he gave the secretary the two certificates of stock of the old companies, representing the other one-third interest; that he obtained possession of that stock so pledged, by a species of deceit; that he has again sold that one-third interest evidenced by the two certificates, for the sum of fifty thousand dollars to Crane and Carson, receiving ten thousand dollars in cash and eight promissory notes for the sum of five thousand dollars each, which notes he has sold and received payment therefor, and said notes are in the hands of third parties without any security of any sort, and now the court's holding will, if Carson and Crane refuse to pay those notes, give the two certificates of stock back to McKee to again sell and dispose of to other parties for perhaps fifty thousand dollars more." If it is true that McKee has once hypothecated and twice sold the stock and received the full value thereof at the time of each sale, and ten thousand dollars at the time of the hypothecation, and that the effect of the judgment is to restore to him the stock for sale a third time, there is no doubt that there has been a miscarriage of justice and the case should be reversed. But we cannot accept the statement of the appellant in her brief unless substantiated by the record therein contained, and this the record fails to do. From an examination of that record we are unable to see that the trial court committed any error.

The judgment is affirmed.

Melvin, J., and Lorigan, J., concurred.